**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE BRADLEY WESTON TAGGART,
                                    *Debtor*,

SHELLEY A. LORENZEN, Executor of
Estate of Stuart Brown; TERRY W.
EMMERT; KEITH JEHNKE; SHERWOOD
PARK BUSINESS CENTER, LLC,
                                    *Appellants*,

v.

BRADLEY WESTON TAGGART,
                                    *Appellee*.

No. 16-35402

D.C. No.
3:12-cv-00236-
MO

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, Chief District Judge, Presiding

| | |
|---|---|
| IN RE BRADLEY WESTON TAGGART, *Debtor*, | No. 16-60032 |
| BRADLEY WESTON TAGGART, *Appellant*, v. SHELLEY A. LORENZEN, Executor of Estate of Stuart Brown; TERRY W. EMMERT; KEITH JEHNKE; SHERWOOD PARK BUSINESS CENTER, LLC, *Appellees*. | BAP No. 15-1158 |

| | |
|---|---|
| IN RE BRADLEY WESTON TAGGART, *Debtor*, | No. 16-60033 |
| BRADLEY WESTON TAGGART, *Appellant*, v. TERRY W. EMMERT; KEITH JEHNKE; SHERWOOD PARK BUSINESS CENTER, LLC; SHELLEY A. LORENZEN, Executor of Estate of Stuart Brown, *Appellees*. | BAP No. 15-1119 |

IN RE BRADLEY WESTON TAGGART,
*Debtor*,

SHELLEY A. LORENZEN, Executor of
the Estate of Stuart Brown,
*Appellant*,

v.

BRADLEY WESTON TAGGART,
*Appellee*.

No. 16-60039

BAP No.
15-1119

IN RE BRADLEY WESTON TAGGART,
*Debtor*,

TERRY W. EMMERT; KEITH JEHNKE;
SHERWOOD PARK BUSINESS CENTER,
LLC,
*Appellants*,

v.

BRADLEY WESTON TAGGART,
*Appellee*.

No. 16-60040

BAP No.
15-1119

IN RE BRADLEY WESTON TAGGART,          No. 16-60042
                        *Debtor*,

                                         BAP No.
                                         15-1158

SHELLEY A. LORENZEN, Executor of
Estate of Stuart Brown,
                        *Appellant*,

                    v.

BRADLEY WESTON TAGGART,
                        *Appellee*.


IN RE BRADLEY WESTON TAGGART,          No. 16-60043
                        *Debtor*,

                                         BAP No.
                                         15-1158

TERRY W. EMMERT; KEITH JEHNKE;
SHERWOOD PARK BUSINESS CENTER,
LLC,                                     OPINION
                        *Appellants*,

                    v.

BRADLEY WESTON TAGGART,
                        *Appellee*.


Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Kirscher, Jury, and Faris, Bankruptcy Judges, Presiding

Argued and Submitted October 3, 2017
Portland, Oregon

Filed April 23, 2018

Before: Edward Leavy, Richard A. Paez,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

## SUMMARY[*]

### Bankruptcy

The panel affirmed the Bankruptcy Appellate Panel's opinion reversing the bankruptcy court's order entering contempt sanctions against creditors for knowingly violating the discharge injunction in a Chapter 7 case.

The panel held that the creditors did not knowingly violate the discharge injunction because they had a subjective good faith belief that the discharge injunction did not apply to their state-court claim for post-petition attorneys' fees. The creditors' subjective good faith belief, even if unreasonable, insulated them from a finding of contempt. The panel concluded that it therefore need not reach the creditors' cross-appeal from the district court's holding that they violated the discharge injunction.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

John Martin Berman (argued) and Damon J. Petticord, Tigard, Oregon, for Bradley Weston Taggart.

Janet M. Schroer (argued), Hart Wagner LLP, Portland, Oregon; James Ray Streinz, Streinz Law Office, Portland, Oregon, for Shelley Lorenzen.

Hollis Keith McMilan (argued), Hollis K. McMilan P.C., Portland, Oregon, for Terry W. Emmert, Keith Jehnke, and Sherwood Park Business Center LLC.

## OPINION

BEA, Circuit Judge:

This case arises out of a complex set of bankruptcy proceedings. Appellant Bradley Taggart was a real estate developer who owned a 25% interest in Sherwood Park Business Center, LLC ("SPBC"). Appellees and Cross-Appellants Terry Emmert and Keith Jehnke also each owned a 25% interest in SPBC. In 2007, Taggart allegedly transferred his share of SBPC to his attorney in this action, John Berman.

When Emmert and Jehnke learned that Taggart had transferred his interest in SPBC to Berman, they sued Taggart and Berman in Oregon state court, asserting that the transfer breached SPBC's operating agreement because Taggart did not provide the notice required to allow Emmert and Jehnke to exercise their right of first refusal to buy Taggart's interest at the agreed upon price. The state court action also sought attorneys' fees pursuant to the operating

agreement. Taggart filed an answer to the state court action, sought to dismiss the action, and filed a counterclaim for attorneys' fees pursuant to the operating agreement.

On November 4, 2009, shortly before trial in the state court action, Taggart filed a voluntary Chapter 7 Bankruptcy petition (the "Petition"). The state court action was stayed pending the resolution of Taggart's bankruptcy Petition. On February 23, 2010, Taggart received his discharge in the bankruptcy proceedings.

After the discharge, Emmert and Jehnke, represented by attorney Stuart Brown, continued the state court action against Berman and Taggart. As part of the litigation, Brown served Taggart with a subpoena for a deposition. Taggart, represented by Berman, moved for a protective order that would allow him not to appear at the deposition, but the state trial court never ruled on the motion. Nonetheless, Taggart appeared for his deposition.

Prior to trial, Berman moved on Taggart's behalf to dismiss the claims against Taggart in light of the bankruptcy discharge. The state court denied the motion, finding that Taggart was a necessary party to Emmert and Jehnke's claims seeking to expel Taggart from SPBC, but the parties agreed that no monetary judgment would be awarded against Taggart. Taggart did not appear at or participate in the trial, but Berman orally renewed his motion to dismiss on Taggart's behalf at the close of evidence. The state court once again denied the motion.

After trial, the state court issued findings of fact and conclusions of law that unwound the transfer of Taggart's interest in SPBC to Berman and expelled Taggart from SPBC. Brown submitted a proposed judgment, to which

Berman objected. Taggart appeared at the hearing for entry of the judgment and provided testimony and argument.

Following the hearing, the state court entered a judgment that allowed any party to petition for attorneys' fees. The litigation regarding attorneys' fees spawned a complex, interrelated web of litigation in both state and federal court.

First, Brown filed a petition for attorneys' fees in state court on behalf of SPBC, Emmert, and Jehnke. Brown's fee petition sought to recover fees against both Berman and Taggart, but limited the request for fees against Taggart to those fees that had been incurred after the date of Taggart's bankruptcy discharge. In the fee petition, Brown alerted the state court to the existence of Taggart's bankruptcy discharge and argued that Taggart could still be held liable for attorneys' fees incurred after Taggart's discharge because Taggart had "returned to the fray." That is, SPBC, Emmert, and Jehnke claimed Taggart had willingly engaged in opposing them in the state court action after Taggart obtained his bankruptcy discharge. Taggart opposed Brown's petition for attorneys' fees, arguing his bankruptcy discharge barred any claim for attorneys' fees, whether they were incurred before or after his discharge in bankruptcy.

While the attorneys' fee petition was pending in state court, Taggart moved the bankruptcy court to reopen his bankruptcy proceeding. The day the bankruptcy court reopened Taggart's bankruptcy proceeding, Taggart filed a motion seeking to hold Brown, Jehnke, Emmert, and SPBC (collectively, the "Creditors") in contempt for violating the discharge by seeking an award of attorneys' fees against him in the state court action.

Meanwhile, the state trial court issued a ruling awarding attorneys' fees to SPBC, but not Jehnke and Emmert. The

state court ruled that Taggart could be held liable for attorneys' fees that were incurred after his bankruptcy discharge because he had "returned to the fray."[1] Taggart appealed the state court's determination to the Oregon Court of Appeals. *See Sherwood Park Bus. Ctr., LLC v. Taggart*, 341 P.3d 96 (Or. Ct. App. 2014).

Subsequently, the bankruptcy court denied Taggart's motion for contempt, finding that the state court had correctly decided the issue: whether Taggart had indeed "returned to the fray." Taggart appealed the bankruptcy court's ruling to the district court. The district court reversed, finding that Taggart's actions were insufficient to constitute a "return to the fray" and, as a result, the discharge injunction barred the attorneys' fee claim. The district court remanded to the bankruptcy court for a determination of whether the Creditors "knowingly violated the discharge injunction in seeking attorney fees."[2]

On remand, the bankruptcy court found the Creditors had knowingly violated the discharge injunction by seeking attorneys' fees in the state action and entered an order holding them in contempt. Following further proceedings, the bankruptcy court awarded sanctions against SPBC,

---

[1] Whether Taggart had "returned to the fray" was significant because if a debtor "returns to the fray" by engaging in post-bankruptcy petition litigation, a creditor may seek an attorneys' fee award if the new litigation was not within the "fair contemplation of the parties" prior to the bankruptcy petition. *See In re Castellino Villas, A. K. F. LLC*, 836 F.3d 1028, 1034–37 (9th Cir. 2016).

[2] Emmert, Brown, Jehnke, and SPBC filed a notice of appeal of the district court's decision. This court dismissed the appeal because the district court's ruling was not a final order.

Emmert, Jehnke, and Brown's estate,[3] pursuant to the court's contempt ruling.

The Creditors appealed the bankruptcy court's contempt ruling to the Bankruptcy Appellate Panel ("BAP"). On appeal, the BAP reversed the bankruptcy court's finding of contempt. The BAP reasoned that the Creditors could not be held in contempt unless they "knowingly" violated the discharge injunction. Because the BAP found that the Creditors had a good faith belief that the discharge injunction did not apply to their attorneys' fee claim, it concluded that they had not "knowingly" violated the discharge injunction.

In the meantime, the Oregon Court of Appeals reversed the state trial court's ruling regarding attorneys' fees. *See Taggart*, 341 P.3d at 102–04. In line with the district court, the Oregon Court of Appeals held that Taggart's actions were not sufficiently affirmative or voluntary to constitute a "return to the fray." *Id.* As a result, the court concluded that the discharge injunction barred the recovery of attorneys' fees. *Id.*

Ultimately, the Creditors were barred from pursuing attorneys' fees against Taggart by the rulings of both the district court and the Oregon Court of Appeals. Additionally, due to the BAP's ruling, the Creditors were not liable for sanctions for knowingly violating the discharge injunction by seeking attorneys' fees against Taggart in the state court litigation.

---

[3] Brown passed away in 2013. Shelley Lorenzen represents Brown in this litigation as the executor of his estate.

Taggart filed a notice of appeal challenging the BAP's decision to reverse the bankruptcy court's contempt findings against the Creditors. The Creditors filed a notice of cross-appeal challenging the district court's ruling that Taggart had not returned to the fray in the state court litigation.

I

We begin with Taggart's appeal, in which he argues that the BAP committed reversible error when it held that the Creditors could not be held in contempt because they did not *knowingly* violate the discharge injunction. A discharge under Chapter 7 of the bankruptcy code "discharges the debtor from all debts that arose before the date of the" bankruptcy petition. 11 U.S.C. § 727(b). Once issued, the discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). A bankruptcy court may enforce the discharge injunction by holding a party in contempt for knowingly violating the discharge. *In re Zilog, Inc.*, 450 F.3d 996, 1007 (9th Cir. 2006).

In this case, after the district court concluded that Taggart had not "returned to the fray," it remanded the case to the bankruptcy court for a determination of whether the Creditors should be held in contempt. The bankruptcy court determined that the Creditors were aware of the discharge order, but proceeded with their efforts to recover attorneys' fees from Taggart. The bankruptcy court concluded that it was irrelevant whether the Creditors held a subjective good faith belief that the discharge injunction did not apply to their claim. As a result, the bankruptcy court held that the Creditors had committed a knowing violation of the discharge injunction and it held them in contempt.

On appeal, the BAP reversed. The BAP concluded that the Creditors had a subjective good faith belief that their claim was exempt from the discharge injunction. In light of this good faith belief, the BAP held that the Creditors did not "knowingly" violate the discharge injunction, even though an actual violation had occurred.

We review the BAP's decisions de novo. *In re Filtercorp, Inc.*, 163 F.3d 570, 576 (9th Cir. 1998). The bankruptcy court's decision to impose contempt sanctions is reviewed for an abuse of discretion. *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003). A bankruptcy court abuses its discretion if its decision is based on an incorrect legal rule, or if its "application of the correct legal standard was (1) 'illogical,' (2) 'implausible,' or (3) without 'support in inferences that may be drawn from the facts in the record.'" *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 577 (1985)).

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002) (quoting *F.T.C. v. Affordable Media,* 179 F.3d 1228, 1239 (9th Cir.1999)). As noted above, a bankruptcy court may hold a party in contempt for knowingly violating the discharge injunction. *Zilog*, 450 F.3d at 1007. We have adopted a two-part test for determining the propriety of a contempt sanction in the context of a discharge injunction: "[T]o justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable

and (2) intended the actions which violated the injunction." *Bennett*, 298 F.3d at 1069.

Only the first prong of the test is at issue here. To satisfy the first prong, knowledge of the applicability of the injunction must be proved as a matter of fact and may not be inferred simply because the creditor knew of the bankruptcy proceeding. *Zilog*, 450 F.3d at 1007–08; *see also Dyer*, 322 F.3d at 1191–92 (rejecting an attempt to infer knowledge of the automatic stay based on knowledge of the bankruptcy proceedings in the context of a contempt ruling).[4] Additionally, the creditor's good faith belief that the discharge injunction does not apply to the creditor's claim precludes a finding of contempt, even if the creditor's belief is unreasonable. *Zilog*, 450 F.3d at 1009 n.14 ("To the extent that the deficient notices [from the bankruptcy court and opposing counsel] led the [creditors] to believe, even unreasonably, that the discharge injunction did not apply to their claims because they were not affected by the bankruptcy, this would preclude a finding of willfulness.").

In this case, the bankruptcy court abused its discretion by concluding that the Creditors knowingly violated the discharge injunction. Specifically, the bankruptcy court abused its discretion by applying an incorrect rule of law. *See Hinkson*, 585 F.3d at 1262. The bankruptcy court held that a good faith belief that the discharge injunction was

---

[4] Although *Dyer* dealt with a violation of the automatic stay, rather than a violation of the discharge injunction, the sanctions at issue were not imposed under the bankruptcy code provision that specifically allows sanctions for a violation of the automatic stay, 11 U.S.C. § 362(h). *Dyer*, 322 F.3d at 1189. Rather, sanctions were imposed under the bankruptcy court's 11 U.S.C. § 105(a) contempt authority, thereby invoking the standard that applies when there is a violation of the discharge injunction. *Id.*

inapplicable to the Creditors' claims was irrelevant for purposes of determining whether there was a "knowing" violation of the discharge injunction. This holding conflicts with *Zilog*, where we stated that even an unreasonable belief that the discharge injunction did not apply to a creditor's claims would preclude a finding of contempt. 450 F.3d at 1009 n.14.

It is true, as Taggart points out, that language from our prior opinions in *Bennett* and *Dyer* appears to be somewhat in tension with *Zilog*.**[5]** However, neither *Bennett* nor *Dyer* held that a creditor's subjective good faith belief that the discharge injunction is inapplicable is irrelevant to the contempt analysis. In fact, *Bennett* expressly states that the creditor must know that the discharge injunction is "applicable" to the creditor's claims, and *Dyer* cited that holding with approval. *Bennett*, 298 F.3d at 1069; *Dyer*, 322 F.3d at 1192. Regardless, *Zilog*'s statement of the law is clear, directly addresses the question at issue in here, and is binding on this court.

In this case, as the BAP found, the Creditors possessed a good faith belief that the discharge injunction did not apply to their claims based on their contention that Taggart had "returned to the fray," and Taggart does not contend otherwise. Much like the creditors in *Zilog* relied on statements by the debtor's counsel and the bankruptcy court in concluding that their claims were not impacted by the discharge injunction, the Creditors relied on the state court's

---

**[5]** Taggart specifically highlights language from *Dyer*, which states: "In determining whether the contemnor violated the stay, the focus 'is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue.'" 322 F.3d at 1191 (quoting *In re Hardy*, 97 F.3d 1384, 1390 (11th Cir. 1996)).

judgment that the discharge injunction did not apply to their claim for post-petition attorneys' fees. Although the Creditors—like the creditors in *Zilog*—were ultimately incorrect, their good faith belief, even if unreasonable, insulated them from a finding of contempt. *Zilog*, 450 F.3d at 1009 n.14. As a result, the BAP did not err when it reversed the contempt sanctions entered by the bankruptcy court against the Creditors.

## II

Because we have determined that the Creditors cannot be held in contempt for any alleged violation of the discharge injunction, we need not reach the arguments raised in the Creditors' cross-appeal regarding the district court's holding that the Creditors violated the discharge injunction by seeking an attorneys' fee award in the state court litigation.[6] Even if the Creditors did violate the discharge injunction— and we express no opinion as to whether they did or did not—they cannot be held in contempt for that alleged violation. As discussed above, they acted pursuant to their good faith belief that, due to Taggart's "return to the fray," the discharge injunction did not apply to their claims. As a

---

[6] After the district court's decision in this case, but before the parties completed their briefing in our court, another Ninth Circuit panel issued an opinion in *In re Castellino Villas, A. K. F. LLC*, 836 F.3d 1028, 1034 (9th Cir. 2016). Lorenzen's briefing to this court recognized the *Castellino Villas* opinion and noted that, in Lorenzen's view, *Castellino Villas* commands resolution of whether Creditors violated the discharge against the Creditors. At the time of briefing in this case, *Castellino Villas* had been decided, but could have been reheard by an en banc panel of this court or overturned or modified by the Supreme Court. Lorenzen requested that we deem her cross-appeal withdrawn if *Castellino Villas* was not overturned or modified. Because *Castellino Villas* has neither been overturned nor modified, we grant Lorenzen's request to withdraw her cross-appeal. Therefore, we do not address it.

result, we decline to reach the issues raised by the Creditors' Cross-Appeal.

## III

In light of the above, we **AFFIRM** the BAP's opinion reversing the bankruptcy court's order entering contempt sanctions against the Creditors.