
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br><br>THE PRESERVE, LLC,<br><br><div align="right">Debtor.</div> | BAP No. CC-17-1357-LLsTa<br>BAP No. CC-17-1387-LLsTa<br>(Related)<br><br>Bk. No. 2:10-bk-18429-BB |
| RESS FINANCIAL CORPORATION,<br><br>Appellant,<br><br>v.<br><br>BEAUMONT 1600, LLC; JOHN J.<br>MENCHACA, Chapter 7 Trustee,<br><br><div align="right">Appellees.</div> | Adv. No. 2:13-ap-01406-BB<br><br><br>**MEMORANDUM**<sup>*</sup> |

Argued on June 21, 2018 at Pasadena, California
Submitted on July 13, 2018

Filed – September 7, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

---

<sup>*</sup>This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Sheri Bluebond, Chief Bankruptcy Judge, Presiding

————————

Appearances: William Miles Burd of Ringstad & Sanders, LLP argued for Appellant; Dugan Patrick Kelley of Kelley Clarke PLLC argued for Appellees.

————————

Before: Lafferty, Taylor, and Lastreto,[**] Bankruptcy Judges.

**INTRODUCTION**

In 2006 Debtor entered into a loan transaction with Point Center Financial, Inc. ("PCF"), executing a promissory note for $39 million secured by a deed of trust encumbering approximately 1,300 acres of land. In March 2008, PCF executed and recorded two partial reconveyances of its deed of trust, reducing the acreage of the encumbered collateral by about half. Debtor filed a chapter 11[1] case in September 2008. During those proceedings, the bankruptcy court entered an order valuing PCF's secured claim and describing the collateral as 636 acres. The case was later converted to chapter 7. In the order converting the case, the bankruptcy court also granted PCF relief from stay to enforce its nonbankruptcy remedies under its note and

————————

[**]Hon. René Lastreto II, United States Bankruptcy Judge for the Eastern District of California, sitting by designation.

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

deed of trust.

Thereafter, RESS Financial Corporation ("RESS"), agent for the trustee under the deed of trust, National Financial Lending, Inc. ("NFL"), initiated foreclosure proceedings by recording a Notice of Default and Election to Sell ("NOD"). Debtor's counsel and the chapter 7 trustee's counsel both notified RESS in writing that a portion of the collateral had been reconveyed and that foreclosure against the reconveyed parcels would violate the automatic stay. RESS nevertheless continued with the foreclosure process, including recording a Notice of Trustee's Sale ("NOTS"), relying on advice and instructions from PCF and the foreclosure trustee, who informed RESS that the reconveyances were not valid because they did not comply with California's Subdivision Map Act ("SMA"). After the chapter 7 trustee filed a complaint seeking declaratory relief and an injunction to stop the foreclosure and damages for stay violations, RESS rescinded the NOD.

RESS, however, continued to litigate the adversary proceeding, taking the position that the reconveyances were not valid, i.e., that it was not bound by the bankruptcy court's valuation order, and that it did nothing wrong in initiating foreclosure on the entire property.

After a trial, the bankruptcy court entered judgment finding RESS liable for a willful stay violation. The bankruptcy court imposed contempt sanctions on RESS totaling in excess of $400,000 pursuant to the court's inherent authority, representing fees and costs incurred by the parties who had

3

represented the estate's interest in the adversary proceeding. RESS timely appealed (i) the judgment; and (ii) the order allowing an administrative claim for reimbursement of attorney's fees incurred by Debtor's managing member.

Because the court failed to apply the correct legal standard and burden of proof on whether the stay violation was knowing and willful, we VACATE and REMAND the judgment and the order.

## FACTUAL BACKGROUND

Debtor is a California limited liability company that invested in real estate. Debtor's managing member is Beaumont 1600, LLC ("Beaumont"), and Scott Krentel is Beaumont's managing member.

In 2006 Debtor entered into a loan transaction with PCF, the originator, servicer, and designated agent for multiple beneficiaries under the transaction. Debtor executed a promissory note for $39 million with a maturity date of November 1, 2008, along with a deed of trust encumbering 1,331 acres of land in Beaumont, Riverside County, California, known as the Legacy Highlands (the "Property"). NFL is the trustee under the PCF deed of trust.

To ensure that open space and rights of way throughout the Property would be free and clear of PCF's lien during the development process, the deed of trust includes a rider that contains a provision for partial releases of the lien upon payment of a "Release Price" and other conditions, one of which is that any partial release must comply with California's Subdivision Map Act

("SMA"). In connection with the development of the Property, NFL executed two partial reconveyances as to a total of approximately 695 acres of the Property. Both reconveyances were recorded in March 2008.

Debtor filed for chapter 11 relief on September 25, 2008.[2] In June 2009 PCF moved for relief from stay to pursue its remedies under its note and deed of trust based on Debtor's failure to pay the note on the maturity date and lack of equity in the Property. In its opposition to the motion for relief from stay, Debtor argued that the motion contained an inaccurate legal description, pointing out the partial reconveyances, and attached a declaration with copies of the reconveyances. The bankruptcy court denied the motion without prejudice.[3]

In connection with plan confirmation, Debtor moved for an order valuing the Property for purposes of determining the amount of PCF's secured claim. On December 22, 2010, the bankruptcy court entered an order stating: "The current value of the collateral securing the PCF debt for purposes of 11 U.S.C. § 506(a)(1) in this case, consisting of approximately 636 acres of the Property (the original acreage, less the acres of vacant land

---

[2]The case was originally filed in the Riverside Division; it was transferred to the Los Angeles Division on March 8, 2010.

[3]The court denied the motion because, even though Debtor had no equity in the Property, it was necessary to Debtor's effective reorganization. PCF appealed, and Debtor cross-appealed, to this Panel. The Panel affirmed all aspects of the court's ruling (BAP Nos. CC-10-1020-DMkH and CC-10-1021-DMkH).

reconveyed), is $18,620,000." In December 2011 Debtor's Fifth Amended Chapter 11 Plan was confirmed and a discharge entered. The confirmed plan provided that PCF's collateral consisted of approximately 636 acres of unimproved land.

In November 2012, the bankruptcy court, on PCF's motion, converted the case to chapter 7 due to Debtor's default under the confirmed plan. Appellee John J. Menchaca ("Trustee") was appointed chapter 7 trustee. The conversion order provided, "PCF and the Beneficiaries have relief from the automatic stay to pursue the remedies available to it [sic] under applicable nonbankruptcy law under their promissory note and deed of trust."

Shortly thereafter, NFL retained RESS to institute nonjudicial foreclosure proceedings against the Property. RESS, acting as NFL's agent, prepared an NOD, which was recorded December 3, 2012. By letter dated December 19, 2012, Debtor's counsel, Jeffrey Broker, notified RESS of the partial reconveyances and attached copies, warning that the automatic stay "absolutely prevents any foreclosure affecting that portion of the Property that is presently free and clear of the lien of the Deed of Trust that is the subject matter of the Reconveyances."[4] Mr. Broker demanded that the NOD be rescinded as defective, in violation of the automatic stay, and slanderous

_____

[4]The December 19 letter also stated that the NOD was defective because it did not specify the correct legal description of the property; however, the NOD contained no legal description.

to title to the Property. Mr. Broker's letter did not reference the bankruptcy court's valuation order.

In March 2013, RESS prepared and recorded a NOTS setting a sale date of April 5, 2013. The NOTS included a legal description of the entire Property, including the portions that had been reconveyed. On March 25, 2013, Trustee's counsel, Irv Gross, sent a letter to Bruce Beasley, president of RESS, pointing out that the NOTS contained an erroneous legal description that did not reflect the partial reconveyances. Mr. Gross referenced and attached Mr. Broker's December 19 letter. Mr. Gross demanded that both the NOTS and the NOD be rescinded for the same reasons recited by Mr. Broker, including that the recordation of the documents violated the automatic stay. But again, Mr. Gross's letter did not reference the bankruptcy court's valuation order.

At trial, Mr. Beasley testified that he is an expert in properly identifying property being foreclosed upon and that he is aware of the importance of including an accurate legal description in the foreclosure documents. He testified that he initially discovered the existence of the reconveyances in December 2012 when he examined the trustee's sale guarantee RESS obtained after being hired by NFL to conduct the foreclosure. Upon further investigation, Mr. Beasley concluded that no map had been recorded, as required under the SMA, that identified the reconveyed property as separate legal parcels. After consulting with the title officer, Mr. Beasley concluded that

7

conducting a nonjudicial foreclosure as to anything less than the entire property described in the deed of trust would violate the SMA. He then consulted with NFL representatives, who – according to Mr. Beasley – advised Mr. Beasley that the partial reconveyances were not valid because they did not comply with the SMA or the provisions of the rider attached as Exhibit E to the deed of trust. The NFL representatives instructed Mr. Beasley to prepare the NOTS using the legal description from the deed of trust, and he did so.

Mr. Beasley acknowledged receiving the letters from Mr. Broker and Mr. Gross. He testified that he turned over both letters to René Esparza, an officer of NFL, and Dale Martin, counsel for PCF. Mr. Beasley testified that counsel asserted to Mr. Beasley that the reconveyances were not valid and that the court's order granting relief from stay was adequate to permit the foreclosure on the entire Property to go forward. Mr. Martin responded to Mr. Gross by letter dated March 27, 2013 stating that PCF believed it had the right to proceed with the foreclosure and that it intended to do so.[5]

Two days later, on March 29, 2013, Trustee filed an adversary complaint

---

[5]This letter was attached to Mr. Beasley's trial declaration filed in the adversary proceeding and was referred to at trial, but it was not included as an attachment to Mr. Beasley's declaration in Appellant's excerpts of record. Accordingly, we have exercised our discretion to examine the bankruptcy court's docket and imaged papers in the main bankruptcy case and related adversary proceedings. *Woods & Erickson LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

against RESS and NFL (collectively, "Defendants"[6]) seeking (1) declarations that: (a) the NOD was invalid under applicable California law; (b) the NOTS was invalid under applicable California law; and (c) title to property of the chapter 7 estate had been slandered;[7] (2) damages for violation of the automatic stay; and (3) a preliminary injunction stopping the foreclosure with respect to the reconveyed portions of the Property. The bankruptcy court entered a temporary restraining order on April 4, 2013, and a preliminary injunction a few weeks later.

On May 3, 2013, RESS recorded a notice of rescission of the NOD and thereafter took no further action under the PCF deed of trust. In September 2013 RESS and NFL each filed a Declaration of Non-Monetary Status Pursuant to California Civil Code § 29241, asserting that they had been named in the adversary proceeding only in their capacities as foreclosure trustees but had committed no wrongful acts or admissions; they agreed to be bound by any judgment entered regarding the deed of trust, so long as they were not subject to any monetary awards. Litigation continued over the next two and a half years. During that time the bankruptcy court denied RESS's motion to dismiss Trustee's second claim for relief (seeking damages for violation of the

---

[6]PCF was not named in the complaint. Presumably, this was because PCF had filed its own bankruptcy case on February 19, 2013. Trustee later settled The Preserve bankruptcy estate's claims against the PCF bankruptcy estate.

[7]After this appeal was filed, the parties entered into a stipulation to dismiss the claims for declaratory relief as moot.

9

automatic stay) for failure to state a claim, and the parties attended an unsuccessful mediation.

In January 2016, RESS filed a motion for summary judgment seeking a finding that no stay was in effect as to any portion of the Property when foreclosure proceedings were commenced.[8] Trustee filed a cross-motion for partial summary judgment seeking declarations that Defendants had knowingly and willfully violated the stay and had slandered title to the Property, and a permanent injunction enjoining foreclosure of the portion of the Property belonging to the bankruptcy estate.

At a hearing held on March 15, 2016, the bankruptcy court denied Defendants' motion and granted Trustee's request to convert the preliminary injunction to a permanent injunction. The bankruptcy court also granted the Trustee's motion for summary judgment for a declaration that Defendants had violated the automatic stay. In its order granting Trustee's motion in part, the court explained:

> Defendants knew of the Debtor's pending bankruptcy and the automatic stay. Defendants proceeded with the nonjudicial foreclosure of property belonging to the bankruptcy estate. The property against which Defendants took action was not part of the collateral package against which the Court allowed Defendants to take action.

---

[8]RESS filed a motion to supplement the record with the first three pages of its notice and motion for summary judgment. No opposition was received. Accordingly, the additional excerpt not designated in Appellant's designation of record is ORDERED accepted as part of the record on appeal.

10

The scope of the lien of the Deed of Trust was the subject of several hearings in the Preserve Case. On December 22, 2010, this Court issued its Order re: Debtor's Motion for Order Valuing "Legacy Highlands" Real Property, where the Court ruled the collateral securing the PCF debt "consist[ed] of approximately 636 acres of the Property (the original acreage, less the acres of vacant land reconveyed)." Defendants attempt[ed] to foreclose on all real property described within the legal description of the Deed of Trust. By doing so, Defendants violated the automatic stay codified at 11 U.S.C. § 362(a).

The court, however, denied Trustee's motion to the extent it sought a finding that the stay violation was knowing and willful, noting that such a determination is "intensely factual." It also denied the motion in relation to the slander of title issues.

Trial was held in January 2017 on the issue of whether Defendants' violation of the stay was willful and intentional and whether the recording of the NOD and NOTS slandered title to the reconveyed portions of the Property. Direct testimony was by declaration;[9] Mr. Beasley was the only witness cross-examined.

At the conclusion of trial, the bankruptcy court found that RESS had willfully and intentionally violated the stay by continuing to proceed with the foreclosure process after being informed by Debtor's counsel by letter dated

---

[9]The following witnesses testified by declaration: Mr. Beasley; Mr. Broker; Mr. Krentel; Trustee; Monica Y. Kim, counsel for Trustee; and Matthew Clarke, special counsel for Debtor.

December 19, 2012 (and presumed to have been delivered on December 20, 2012), that the automatic stay applied to the portion of the Property that had been reconveyed. The court found that RESS's belief that it was acting in accordance with applicable non-bankruptcy law in recording the NOTS was reckless and unreasonable. The court also made findings that RESS's recordation of the NOTS and maintenance of the NOD slandered title to the Property.[10]

Although RESS rescinded the NOD on May 3, 2013, the court determined that RESS should be charged with all the costs incurred by affected parties in litigating the adversary proceeding because RESS had continued to take the position that the reconveyances were invalid, that it was not bound by the bankruptcy court's determination to the contrary, and that the foreclosure process was valid. "[I]t took this litigation to obtain compliance . . . to confirm or to obtain acknowledgment of defendant, if we even have it now, that it is not okay to proceed with a foreclosure as against the reconveyed property."

The bankruptcy court then requested the parties submit fee applications for the costs incurred in litigating the adversary proceeding and set a further hearing to determine the amount of damages. The court set a deadline of June 14, 2017 for parties to submit fee applications or requests for payment of

---

[10]Because the claims for declaratory relief have been dismissed, the bankruptcy court's findings regarding slander of title are not at issue in this appeal.

administrative expenses.[11] Applications were submitted by the following entities: (i) Levene, Neal, Bender, Yoo & Brill LLP ("LNBYB"), Trustee's counsel, fee application; (ii) Christman, Kelley & Clarke, PC ("CKC"), Trustee's special counsel, fee application; and (iii) Scott Krentel, manager of Beaumont, application for allowance and payment of § 503(b) administrative expense representing reimbursement of legal fees paid by Mr. Krentel to his counsel, Broker & Associates, in connection with the adversary proceeding. At the initial hearing on the applications, it came to light that, pursuant to CKC's retainer agreement, its fees had been paid by Beaumont, with Beaumont reserving the right to seek reimbursement from the estate. Accordingly, the court denied CKC's fee request, but without prejudice to Beaumont seeking reimbursement.

On August 15, 2017, Beaumont filed an application for allowance of an administrative claim for reimbursement of amounts paid to CKC. In the application, Beaumont explained that it did not file an administrative claim

---

[11]The bankruptcy court indicated that, for purposes of determining damages and the reasonableness of fees, it would be easier for the court and parties if the professionals submitted fee applications. Because some legal fees and costs had been paid by other entities, those entities were to file applications for what the bankruptcy court referred to as allowance of "expenses of administration" for the relevant time period. Although Mr. Krentel and Beaumont both invoked § 503(b) in their applications asserting that the fees and costs operated to "preserve the estate," it is not clear what subsection of § 503(b) would have been applicable. Both applicants pointed out that the list of "actual, necessary costs and expenses of preserving the estate" is not exclusive. No party has raised this as an issue on appeal.

by the June 14 deadline because it "mistakenly believed that the Court wanted the lawyers (not it) to apply for their fees." Beaumont thus asked the court to find excusable neglect and consider the application. The bankruptcy court did not find excusable neglect but concluded that it nevertheless had the discretion to consider the application because the deadline had been set by the court, rather than pursuant to a rule or statute. The court noted that the application had been brought before the court by the deadline, albeit by the wrong party, concluding:

> I do think it's uniquely inappropriate here for the Defendant in the adversary proceeding to receive a windfall by not having to pay damages because of the way this played out, and the fact that it kind of slipped through the cracks. So there's no reason for this loss to be imposed on Beaumont, rather than on the Defendant in the adversary proceeding.

The bankruptcy court thereafter entered an order approving allowance of Beaumont's administrative claim, $182,844.98 of which was related to the adversary proceeding.[12]

On December 18, 2017, the bankruptcy court entered judgment in the adversary proceeding jointly against RESS and NFL[13] for damages totaling $424,118.98 for violating the automatic stay, consisting of the following

---

[12]The bankruptcy court also entered orders approving the fee/administrative claim requests of LNBYB and Mr. Krentel. Those orders were not appealed.

[13]NFL initially appeared in the adversary proceeding through counsel. Counsel withdrew in November 2015, after which NFL stopped participating in the proceedings.

amounts previously approved by the court: (1) Beaumont $182,844.98; (2) LNBYB $190,159.50; and (3) Mr. Krentel $51,114.50.

RESS timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred in permitting Trustee to seek damages for contempt via an adversary proceeding.

Whether the bankruptcy court erred in applying the preponderance of the evidence standard to the knowledge and willfulness elements of its contempt finding.

Whether the bankruptcy court applied the correct legal standard in finding RESS in contempt for willfully and intentionally violating the automatic stay.

Whether the bankruptcy court abused its discretion in awarding damages for the period after RESS rescinded the NOD.

Whether the bankruptcy court abused its discretion in considering Beaumont's late-filed application for allowance of administrative claim.

## STANDARDS OF REVIEW

When the bankruptcy court enters judgment after trial, we review its findings of fact for clear error and its conclusions of law de novo. *Thiara v.*

15

*Spycher Brothers (In re Thiara)*, 285 B.R. 420, 426 (9th Cir. BAP 2002).

We review the decision to impose contempt sanctions for an abuse of discretion, and the underlying factual findings for clear error. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003). The bankruptcy court's decision to consider a late filed application for allowance of an administrative claim is also reviewed for abuse of discretion. *See Zilog, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1006-07 (9th Cir. 2006).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262–63 & n.21 (9th Cir. 2009) (en banc).

Factual findings are reviewed for clear error. A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. *Anderson v. City of Bessemer City*, 470 U.S. 564, 577 (1985). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Id.* at 574.

## DISCUSSION

RESS assigns error to several aspects of the bankruptcy court's award of contempt sanctions: it complains that the bankruptcy court erred by

(i) permitting Trustee to pursue contempt sanctions via adversary proceeding; (ii) applying an incorrect burden of proof; (iii) finding RESS in contempt when it had a good faith belief that the stay did not apply to its conduct; (iv) awarding as damages fees and costs incurred after it rescinded the NOD; and (v) considering Beaumont's late-filed application for payment of an administrative expense.

We find that error, if any, in the bankruptcy court's permitting the contempt cause of action to be litigated in an adversary proceeding was harmless, and we find no error in the court's consideration of Beaumont's late-filed application. We hold, however, that the bankruptcy court applied an incorrect legal standard in finding RESS in contempt from and after December 20, 2012, and in applying a preponderance of the evidence standard to the issues of RESS's knowledge and willfulness. We must therefore remand this matter to the bankruptcy court for application of the appropriate legal tests and recalculation of damages if warranted.

**A.   Any error by the bankruptcy court in permitting Trustee to seek contempt sanctions for violation of the stay by adversary proceeding rather than contested matter will be rendered harmless upon remand.**

As a threshold matter, RESS argues that the bankruptcy court erred in permitting the Trustee to seek contempt sanctions by adversary proceeding. The Ninth Circuit Court of Appeals has held that contempt proceedings for violation of the discharge injunction must be initiated by motion under Rule

17

9014 and not by adversary proceeding. *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190-91 (9th Cir. 2011). Presumably this rule also applies to contempt proceedings for violation of the automatic stay. *See In re Zilog*, 450 F.3d at 1008 n.12 (noting that contempt orders for violations of either the discharge injunction or the automatic stay are governed by the same standards). In *Nash v. Clark County (In re Nash)*, 464 B.R. 874, 879 (9th Cir. BAP 2012), this Panel noted that the Ninth Circuit in *Barrientos* had not addressed the proper procedure where (as here) the movant seeks both contempt sanctions and relief of the sort that usually requires an adversary proceeding (here, declaratory and injunctive relief), and concluded that in the appeal before it, remand would not serve the interests of justice.

Citing *Nash*, RESS concedes that "it would make no sense to remand this matter to the bankruptcy court to hear it as a contested matter rather than an adversary proceeding at this point." RESS states that it raised the procedural issue "solely as a factor that should be considered in determining an appropriate sanction to be imposed against it should [the Panel] not simply reverse the finding of contempt."

We agree with RESS's implicit acknowledgment that this error will be rendered harmless on remand. Because we require a reconsideration of fees on remand, we assume that the bankruptcy court, if it determines that an award is appropriate, will award only fees flowing directly from contempt and not allow fees incurred by Trustee (or any other participant in the

litigation) in pursuing relief that required an adversary proceeding. Thus, we conclude that error, if any, in conducting the contempt proceeding via adversary proceeding, was harmless.

**B.    The bankruptcy court applied incorrect legal standards in finding RESS in contempt for violating the automatic stay.**

**1.    Legal Standards Applicable to Contempt Sanctions for Violations of the Automatic Stay**

The automatic stay is an essential component of the Bankruptcy Code. *See America's Servicing Co. v. Schwartz–Tallard (In re Schwartz–Tallard)*, 803 F.3d 1095, 1100 (9th Cir. 2015) (en banc). As such, the automatic stay is liberally construed and strenuously enforced. *See id.* Thus, when a creditor violates the stay, Congress has provided in § 362(k) a "robust remedy" for debtors and a deterrent to creditors in the form of damages resulting from such violation. *Id.*

But a bankruptcy trustee is ineligible to receive damages under § 362(k) because the trustee is not an "individual" within the meaning of that subsection. *In re Dyer, 322 F.3d* at 1189. A trustee may, however, recover damages for violations of the automatic stay as a sanction for ordinary civil contempt. *Id.* As such, the trustee must meet the standards for obtaining contempt sanctions. *Id.* at 1190.

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *Id.* at

1190-91 (quoting *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002)). The automatic stay qualifies as a specific and definite court order. *Id.* at 1191. In determining whether the contemnor violated the stay, the court is to focus on whether the contemnor's conduct complied with the stay, not its subjective belief or intent. *Id.* at 1191. "The threshold standard for imposing a civil contempt sanction in the context of an automatic stay violation therefore dovetails with the threshold standard for awarding damages under § 362[(k)]." *Id.* (citing *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 191 (9th Cir. 1995)). Under either standard, to find a willful stay violation, the bankruptcy court need not find bad faith or subjective intent, but only that the defendant knew of the automatic stay, and the defendant's actions that violated the stay were intentional. *Id. See also Lorenzen v. Taggart (In re Taggart)*, 888 F.3d 438, 443 (9th Cir. 2018) (in the context of a violation of the discharge injunction, the movant must prove that the alleged contemnor (1) knew the discharge injunction was applicable and (2) intended the actions that violated the injunction).

The standard for awarding damages for civil contempt, however, varies from the standard for awarding damages under § 362(k). First, damages are mandatory under § 362(k), while they are discretionary under the court's contempt power. *Johnston Environmental Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 620 (9th Cir. 1993). Second, under § 362(k), a party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay,

20

but in the contempt context, the party must know of the stay and that the stay applies to its conduct. *In re Dyer*, 322 F.3d at 1191-92. In other words, in a contempt proceeding, knowledge of the stay may not be inferred simply because the creditor knew of the bankruptcy. *Id.*; *see also In re Taggart*, 888 F.3d at 444-45. Even an unreasonable belief that the stay does not apply to a creditor's claims would preclude a finding of contempt. *See id.* at 444 (applying rule to violation of the discharge injunction, citing *In re Zilog,* 450 F.3d at 1009 n.14).[14] But once a creditor becomes aware of a stay violation (i.e., by learning that the stay applies to its conduct), it has an affirmative duty to remedy that violation. *In re Dyer*, 322 F.3d at 1192.

> **2.** **The bankruptcy court applied an incorrect quantum of proof to the knowing and willful elements.**

A plaintiff seeking contempt sanctions must show by clear and convincing evidence that the contemnors violated a specific and definite order of the court. *In re Dyer, 322 F.3d* at 1190-91; *In re Taggart*, 888 F.3d at 443. The clear and convincing standard applies not only to whether the stay has been violated but also to knowledge and intent:

[E]ach prong of the Ninth Circuit's two-part test for a finding of

---

[14]We note that this standard differs from that articulated by the Ninth Circuit in contempt proceedings not involving a violation of the automatic stay in bankruptcy. *See Go-Video, Inc. v. Motion Picture Ass'n of Am. (In re Dual-Deck Video Cassette Recorder Antitrust Litig.)*, 10 F.3d 693, 695 (9th Cir. 1993) (holding that a person should not be held in contempt if his action appears to be based on a good faith and **reasonable** interpretation of the court's order).

> contempt in the context of a discharge violation requires a different analysis, and distinct, clear, and convincing evidence supporting that analysis, before a finding of willfulness can be made. This is consistent with the Ninth Circuit's reluctance to hold an unwitting creditor in contempt.

*Emmert v. Taggart (In re Taggart)*, 548 B.R. 275, 288 (9th Cir. BAP 2016), *aff'd sub nom. Lorenzen v. Taggart (In re Taggart)*, 888 F.3d 438 (9th Cir. 2018).

The bankruptcy court found that there was clear and convincing evidence of a stay violation, but it construed the relevant authorities as requiring application of a preponderance of the evidence standard to the question of whether RESS knew of the stay and that its conduct was willful.[15] Therefore, the bankruptcy court's determination of RESS's knowledge and willfulness was erroneous as those determinations were apparently made under the lesser standard of the preponderance of the evidence and not the applicable clear and convincing standard.[16]

Under the clear and convincing standard, the evidence presented by the movant must "place in the ultimate factfinder an abiding conviction that the

---

[15] At the same time, the court stated "[i]f I in fact can find clear and convincing, I'll find that in the alternative, but no, the standard is preponderance." The court never followed up on this statement: in its findings, the court did not state by what quantum of proof it found knowledge and willfulness.

[16] The impact of this error in not readily apparent. There was no conflicting testimony regarding RESS's knowledge or intent, and the bankruptcy court made no finding that Mr. Beasley's testimony was not credible; thus there was no need to weigh one version of events against another.

truth of its factual contentions are highly probable. Factual contentions are highly probable if the evidence offered in support of them 'instantly tilt[s] the evidentiary scales in the affirmative when weighed against the evidence [the non-moving party] offered in opposition.'" *In re Taggart*, 548 B.R. at 288 (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). We remand to the bankruptcy court to determine whether the Trustee established by clear and convincing evidence RESS's knowledge of the applicability of the automatic stay and willful violation.

3. **The bankruptcy court applied an incorrect legal standard in finding RESS in contempt for violating the automatic stay from and after December 20, 2012.**

The bankruptcy court found that once Mr. Beasley received Mr. Broker's December 19 letter informing him of the reconveyances and warning that the foreclosure proceedings violated the automatic stay, Mr. Beasley had a duty to independently verify whether the stay applied rather than to rely on the advice of PCF and NFL in continuing to pursue the foreclosure. In other words, the bankruptcy court found that the letter was sufficient to put RESS on notice that the stay applied to RESS's actions and that RESS should have taken steps to remedy the violation: "[E]ven in the context of contempt . . . . if you know that the stay still applies, then it doesn't matter if you think there's a legal reason that makes it permissible, period. . . . if you know about the existence of the automatic stay, and you have enough information that puts you on notice that you should have done more work, that you should

23

have found out more, you don't have a reasonable good faith belief." This was so despite the fact that neither Mr. Broker's nor Mr. Gross's letters mentioned the bankruptcy court's valuation order, of which Mr. Beasley was not aware until he was served with the Trustee's complaint on April 2, 2013.

In finding that Mr. Beasley knew after reading Mr. Broker's letter that the foreclosure against the reconveyed parcels violated the automatic stay and that RESS's subsequent failure to stop the foreclosure constituted a knowing and willful stay violation, the bankruptcy court made two distinct but related errors. First, the court imputed to Mr. Beasley the knowledge that the stay applied to the reconveyed parcels, i.e., that Mr. Beasley was charged with the knowledge he would have gleaned through further independent investigation such as checking the bankruptcy court docket or seeking an order from the court. Second, in imputing that knowledge, the court concluded that Mr. Beasley's belief that the stay did not apply could not have been reasonable.

But in the contempt context, the alleged contemnor must know of the stay and that the stay applies to its conduct; knowledge of the applicability of the stay must be proved as a matter of fact and may not be inferred because the alleged contemnor knew of the bankruptcy.[17] *In re Dyer*, 322 F.3d at 1191-

---

[17]Admittedly, after receipt of Mr. Broker's letter, Mr. Beasley knew about more than just the bankruptcy case–he knew that the Debtor was taking the position that foreclosure as to the reconveyed parcels was a stay violation. But Mr. Beasley testified

(continued...)

92; *In re Taggart*, 888 F.3d at 444-45. And a good faith belief that the stay does not apply precludes a finding of contempt, even if the creditor's belief is unreasonable. *See In re Taggart*, 888 F.3d at 444.

Moreover, the bankruptcy court's findings as to good faith are confusing and, to some extent, appear to conflate reasonableness and good faith. The court made several statements implying that good faith was not at issue. For example, the court observed, "[y]ou might have 'empty head, pure heart,' but if you have sufficient information that tells you there may well be a problem here, and you do nothing about it, you don't have a reasonable belief." The court also found that after Mr. Beasley received Mr. Broker's letter, any belief that the stay was not being violated was not reasonable, and that "it's not enough to have a subjective good faith belief. It needs to be a reasonable belief, and it cannot be reasonable when you do nothing but put your head in the sand, and do nothing whatsoever to verify whether or not what is being said is correct here."

At the same time, in its oral findings on the specific issues set forth in the parties' joint pretrial order, the court found that (i) RESS's conduct in recording the NOTS was reckless and not with a good faith belief that it was

---

[17](...continued)
that he relied on the advice of PCF and NFL that the reconveyances were invalid and that the court's order granting relief from stay was sufficient to permit the sale to go forward. We leave it to the bankruptcy court on remand to analyze this evidence under the correct legal standard.

acting in accordance with applicable nonbankruptcy law; (ii) RESS acted in good faith in recording the NOD but "not necessarily in maintaining it"; and (iii) RESS's reliance on information provided by PCF and NFL was not in good faith.

In summary, on remand, the bankruptcy court may award damages only if it finds that the Trustee presented clear and convincing evidence that RESS knew that the stay applied to its conduct and acted intentionally in its conduct that violated the stay. A good faith belief, even if unreasonable, precludes an award of damages for contempt.

In making its findings, the bankruptcy court may need to differentiate between RESS's knowledge of the applicability of the stay between December 20, 2012 and April 2, 2013 and its knowledge thereafter. It is entirely possible that there was no real dispute about RESS's knowledge as of April 2, when it was served with the Trustee's complaint: Mr. Beasley testified that once he read the bankruptcy court's valuation order, which was attached to the complaint, he realized that the reconveyed parcels were part of the bankruptcy estate and thus protected by the stay.

## C.    Damages

The bankruptcy court awarded all of the attorneys' fees and costs incurred by counsel for Trustee and the Debtor in connection with the stay violation and the prosecution of the adversary proceeding. The bankruptcy court reasoned that, even though RESS had rescinded the NOD early in the

litigation, it had continued thereafter to assert that it was not bound by the bankruptcy court's valuation order, and it refused to acknowledge any liability for the fees incurred in connection with the effort to terminate the improper foreclosure.

RESS argues that the bankruptcy court erred in awarding fees incurred after the NOD was rescinded, citing *Orange Blossom LP v. Southern Cal. Sunbelt Developers, Inc. (In re Southern Cal. Sunbelt Developers, Inc.)*, 608 F.3d 456 (9th Cir. 2010), for the proposition that fees can only be awarded for the costs of undoing the offensive act and not for establishing entitlement to fees. In *Sunbelt Developers*, the court of appeals upheld the bankruptcy court's award of costs and attorneys' fees under § 303(i) but held that the bankruptcy court erred in holding petitioning creditors liable under its inherent sanctioning authority for costs incurred by the putative debtors in litigating their post-dismissal sanctions motions. *Id.* at 466-67. *Sunbelt*, however, is legally and factually inapplicable because it does not involve civil contempt sanctions for a stay violation, and applicable authorities are to the contrary.

Civil contempt sanctions for willful violations of the automatic stay may appropriately include actual damages and attorney's fees and costs incurred in voiding the stay violation and in pursuing damages for the violation; the "American Rule" on attorneys' fees is inapplicable in a § 105(a) context. *Rediger Inv. Corp. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.)*, 503 B.R. 726, 734–35 (9th Cir. BAP 2013); *see In re Dyer*, 322 F.3d at 1195

(attorney's fees are an appropriate component of a civil contempt award). *See also In re Schwartz-Tallard*, 803 F.3d at 1100-01 (holding that the bankruptcy code authorizes an award of attorney's fees incurred in prosecuting an action for damages for violation of the automatic stay under § 362(k), *overruling Sternberg v. Johnson*, 595 F.3d 937 (9th Cir. 2010)). An award of fees incurred in litigating an issue that does not flow from the stay violation, however, is improper. *In re H Granados Commc'ns, Inc.*, 503 B.R. at 735 (citing *In re Dyer*, 322 F.3d at 1195 & n.19).[18] On remand, the bankruptcy court must employ this standard if it awards fees.[19]

The bankruptcy court applied the correct legal standard in awarding damages. But because we are remanding for the bankruptcy court to make further findings regarding contempt under the appropriate legal standards, we leave it to the bankruptcy court on remand to recalculate damages, if necessary.

---

[18]In *Dyer*, substantial portions of the attorneys' fees sought as a civil contempt sanction were incurred in litigating (i) whether the creditor's unrecorded deed of trust was enforceable against the trustee, and (ii) whether the deed of trust was secured by gift or loan. The court held that the fees incurred in litigating these issues were not appropriately included as part of the civil contempt sanctions because they did not flow from the automatic stay violation alone. 322 F.3d at 1195.

[19]We leave it to the bankruptcy court on remand to determine whether the costs associated solely with litigating the slander of title claim or obtaining the injunction are an appropriate component of damages as "flowing" from the stay violation.

**D.** **The bankruptcy court did not abuse its discretion in considering Beaumont's late-filed claim for an administrative expense.**

RESS argues that the bankruptcy court abused its discretion in considering Beaumont's application for allowance of an administrative expense for the fees it paid to CKC because Beaumont's application was filed after the court-set bar date. RESS argues that Beaumont did not meet the standard for excusable neglect, nor did it show any good reason for its failure to meet the deadline. The bankruptcy court concluded that because its deadline was a court-created deadline rather than one set by rule or statute, it had the discretion to modify the deadline.

RESS cites two cases for the proposition that a bankruptcy court may not set aside its own order without articulating a "good reason": *Taylor v. Lake (In re CADA Investments, Inc.)*, 664 F.2d 1158 (9th Cir. 1981) (affirming the bankruptcy court's setting aside of an order confirming an asset sale on equitable grounds), and *Canter v. Canter (In re Canter)*, 299 F.3d 1150 (9th Cir. 2002) (reversing withdrawal of reference made without a showing of cause). These cases, however, do not persuade us that the bankruptcy court abused its discretion here. They are factually distinguishable in that the orders at issue were immediately operative, as opposed to an order (the court's deadline) to submit an application subject to subsequent review and comment. Here, CKC filed a timely fee application setting forth the fees and costs it had incurred in litigating the adversary proceeding. Therefore, RESS

had an opportunity to object to any fees it disputed. The only defect was that the application was filed by the wrong party. Arguably, CKC's misinterpretation of the court's instructions did not rise to the level of excusable neglect, but the court's consideration of Beaumont's application was not prejudicial to any party, and RESS does not argue to the contrary. We therefore find no abuse of discretion in the court's decision to consider Beaumont's late-filed application.

## CONCLUSION

For the reasons explained above, we VACATE the judgment and order and REMAND for further proceedings in accordance with this disposition.