ORDERED PUBLISHED

FILED

OCT 29 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-18-1261-TaFS |
| JEFFREY MARK FREEMAN, | Bk. No.   2:11-bk-34162-NB |
| Debtor. | |
| JEFFREY MARK FREEMAN, | |
| Appellant, | |
| v. | OPINION |
| NATIONSTAR MORTGAGE LLC, | |
| Appellee. | |

Argued and Submitted on September 26, 2019
at Pasadena, California

Filed – October 29, 2019

Ordered Published – November 5, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Neil W. Bason, Bankruptcy Judge, Presiding

Appearances:    Mark T. Young of Donahoe & Young LLP argued for
                appellant; Valerie Schratz of Hall Griffin LLP argued for
                appellee.

Before: TAYLOR, FARIS, and SPRAKER, Bankruptcy Judges.

TAYLOR, Bankruptcy Judge:

## INTRODUCTION

Jeffrey Freeman ("Debtor") and a secured creditor agreed in open court upon a chapter 13[1] plan that bifurcated the secured creditor's claim into secured and unsecured portions and provided for full payment of the secured portion of the claim (with interest) during the plan term. Debtor made all of the payments under his plan, including full payment of the secured portion of the claim, and received his discharge. Nevertheless, the secured creditor's successor-in-interest commenced post-discharge proceedings to foreclose its lien.

Debtor filed a motion to hold the successor lienholder in contempt of the discharge order. Subsequently, the successor lienholder reconveyed its trust deed, implicitly acknowledging that its secured claim had been paid in full under the chapter 13 plan; but it strongly opposed the contempt

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

motion. The bankruptcy court concluded that because the plan and the discharge order did not expressly, and in its view sufficiently, avoid the trust deed, the initiation of foreclosure proceedings and related activity was not contemptuous.

We disagree with the bankruptcy court in one respect. The undisputed evidence in the record establishes that the secured claim was paid in full under Debtor's plan. And under controlling law, payment in full of the secured claim voided any lien. So, a discharge violation occurred.

And we cannot affirm the bankruptcy court's conclusion that the successor lienholder, Nationstar Mortgage LLC, did not willfully violate the discharge injunction due to an intervening change in the law. Since its decision, the Supreme Court rejected the then-binding Ninth Circuit precedent followed by the bankruptcy court. The bankruptcy court must apply the new test to the facts before it.

Accordingly, we REVERSE in part and VACATE and REMAND for further determinations consistent with this decision and under the standard now required by the Supreme Court.

## FACTS

**Debtor's initial chapter 13 proceedings.** Debtor filed a chapter 13 petition and scheduled an interest in rental property (the "Property") valued at $215,000. The Property secured a senior obligation held by BAC

Home Loans Servicing, LP ("BAC") and another loan. Debtor scheduled the BAC obligation at $308,267.06 and promptly obtained an order avoiding the junior trust deed.

Debtor's initial chapter 13 plan treated BAC as a fully secured creditor. But after BAC filed a secured proof of claim and documented additional arrearages and an increased debt, he filed amended plans. In his final plan, he proposed to pay the secured portion of BAC's claim in full during the course of the case; thus, the plan treated the secured claim as equal to the value of the Property and treated the remainder of BAC's claim as an unsecured claim.

BAC objected to confirmation. It did not directly oppose Debtor's valuation of the Property and the corresponding reduction in the secured portion of the claim, but it strongly opposed the plan's use of a 0.24% interest rate and argued that the appropriate rate was no less than 6.76%. In response, Debtor argued that an appraisal conducted by BAC established that the value of the Property was less than $215,000.

**The confirmation hearing results in a consensual plan.** At the final confirmation hearing, and after months of fits and starts, the bankruptcy court was ready to dismiss the case. And BAC was unhappy that Debtor was arguing for a reduction in the value of the secured portion of its claim below $215,000, particularly as he did so based on an appraisal provided as a courtesy and through what it described as "a motion [o]n improper

4

procedure[.]" Hr'g Tr. (June 14, 2012) 11:3–14. But the bankruptcy court allowed the matter to trail to allow for negotiation. When the bankruptcy court called the matter again, Debtor's counsel represented: "[BAC's counsel] and I have met and conferred and I believe we are in agreement to a consensual plan which provides a value of the [Property] at $190,000, and interest rate payment of 6.75 percent . . . ." *Id.* at 15:21–25. BAC's counsel stated his agreement: "[Debtor's counsel] and I are in agreement for those exact terms, as confirmed today." *Id.* at 16:5–6.[2]

The bankruptcy court trailed the matter yet again, this time to allow the parties and the chapter 13 trustee to determine the precise numbers to include in the plan. When the hearing resumed, the chapter 13 trustee's attorney stated: "[BAC's counsel] and debtor's counsel have agreed to value the [Property], for purposes of the cramdown, in the secured claim amount of $169,340,[3] which will be paid interest at the rate of 6.75 percent

---

[2] BAC, thus, waived its argument that valuation at $190,000 required a motion and hearing.

[3] The difference between $169,340 and $190,000 apparently was necessary to take into account preconfirmation payments. While Nationstar argues that there is no evidence in the record to support this conclusion, we disagree. The record supports that Debtor had made payments to BAC before confirmation. Thus, in order to take into account the negotiated value of the Property as of the petition date ($190,000), the forward looking nature of the plan that provided for payment in full of this claim over the next 48 months, and the fact that some claim reducing payments predated the confirmation hearing, a number less than the agreed value was required for the plan to avoid payment of more than $190,000. The record does not include the data needed to

(continued...)

5

for the remaining 48 months of the plan." *Id.* at 21:15–19. BAC's counsel stated that he had no objections.

**The confirmation order and payoff orders.** An attachment page to the confirmation order stated that the parties stipulated and agreed to certain provisions and that the bankruptcy court confirmed the plan with those provisions. One provision read specifically as to the BAC claim:

> For purpose of plan confirmation, the value of the [Property] is determined to be $194,000. The amount of the secured claim which shall be paid, in full, during the life of the chapter 13 plan is $169,340, with interest at the rate of 6.75% for the remaining 48 months of the Chapter 13 Plan.

After confirmation, BAC transferred its claim to Nationstar Mortgage LLC ("Nationstar").

Over a year later, Debtor filed motions requesting approval of a refinance of the Property and modification of the plan to allow early payment in full of only the secured claim. Nationstar objected; it argued that Debtor failed to provide evidence that the chapter 13 plan modified its lien, and principally it argued that its claim could not be finally modified before the plan was fully performed and discharge was appropriate. The bankruptcy court subsequently denied Debtor's motions without prejudice.

Debtor then filed a new motion to modify the plan to allow him to

---

[3](...continued)
confirm the figures in the Plan, but BAC, Debtor, and the chapter 13 trustee's counsel agreed to them.

pay the entire plan off early. This time, Nationstar did not oppose, and the bankruptcy court eventually granted the motion by an order stating:

> Debtor may shorten his plan from 60 months to a final lump sum payment which pays off his entire plan, namely . . . [t]he remaining balance owed on the senior secured claim of [Nationstar] in the total amount of principal and accrued interest through May 30, 2014 of $121,632.21 . . . [and] One Percent (1%) to allowed . . . . general unsecured claims in the amount of $153.33 . . . .

It also provided: "Upon payment of such Claims, [] Nationstar's secured claim will be deemed satisfied in accordance with the modified plan . . . ."

The bankruptcy court subsequently entered an amended order. It noted that the remaining balance of the Nationstar claim was $123,649.62. And it repeated: "Upon payment of such Claims, [] Nationstar's secured claim will be deemed satisfied in accordance with the modified plan . . . ." We refer to these orders, collectively, as the "Payoff Orders."

Debtor thereafter made the required payment, and the bankruptcy court entered a discharge order.

**Post-discharge events.** Nine months later, Debtor reopened the bankruptcy case to address alleged discharge violations; he asserted that Nationstar sent him a statement claiming significant arrearages and other amounts due and also filed a notice of default to commence foreclosure. In a subsequent status report, Debtor advised that, after reopening, Nationstar agreed that foreclosure was not appropriate and that Debtor anticipated

7

reconveyance of Nationstar's trust deed.

But the reconveyance was not received, so several months later Debtor filed his motion for an order to show cause why Nationstar should not be sanctioned for violating the discharge injunction. He alleged that Nationstar's secured claim was paid in full through his chapter 13 plan. He argued that Nationstar: received notice of the discharge; knew the discharge injunction applied; and then violated the discharge injunction through its collection activity and by failing to respond to his requests for cessation of foreclosure activity and immediate reconveyance of its trust deed. He sought punitive and emotional distress damages.

Debtor later filed a declaration in support of the contempt motion. That same day, Nationstar reconveyed its deed of trust.

Nationstar responded to the contempt motion. It did not contest Debtor's assertion that its claim was extinguished by payment in full under the plan. Instead, it argued that it did not knowingly violate the discharge injunction and that it both rescinded its notice of default and reconveyed its deed of trust promptly once it learned that the discharge injunction was applicable.

After numerous hearings, a failed mediation attempt, and additional filings by Debtor, the bankruptcy court took the matter under submission.

**The bankruptcy court's decision.** The bankruptcy court entered a memorandum decision denying the motion. In the decision, it concluded

that Debtor failed to meet his burden to show, by clear and convincing evidence, that Nationstar knew that the discharge injunction applied to its acts and, nevertheless, proceeded in willful violation of the discharge injunction. In reaching this decision, the bankruptcy court decided two things: first, the plan and Payoff Orders did not alter the lien; second, Nationstar would not have expected the plan to do so. In reaching this decision, the bankruptcy court did not discuss the oral agreements at the confirmation hearing; and, prior to this decision, Nationstar did not dispute that the plan paid its secured claim in full and had already reconveyed its trust deed, so Debtor had no reason to provide a transcript or other evidence of the agreements made on the record. There is no indication that this specific issue was the subject of dispute when the bankruptcy court took the matter under submission.

The bankruptcy court entered a separate order. Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334, 157(b)(2). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion when it denied Debtor's motion for sanctions?

## STANDARD OF REVIEW

We review for an abuse of discretion the bankruptcy court's decision on a motion for contempt. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

The only issue before the bankruptcy court when it took the matter under submission was whether Nationstar was subject to civil contempt sanctions based on action and inaction before its reconveyance of its trust deed. "Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019); *cf. In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) ("Civil contempt in this context consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply."). Bankruptcy courts may hold parties in contempt, including

for violating the discharge injunction. *Taggart*, 139 S. Ct. at 1801.

**The relevant legal standard has changed: the Supreme Court's** *Taggart* **decision.** When the bankruptcy court issued its decision and order, it cited and relied on the Ninth Circuit's then-binding decision, *Lorenzen v. Taggart (In re Taggart)*, 888 F.3d 438 (9th Cir. 2018). But thereafter, the Supreme Court concluded that the Ninth Circuit applied the wrong legal standard and thus vacated and remanded. *Taggart*, 139 S. Ct. at 1804.

In its *Taggart* decision, the Ninth Circuit held that if a creditor had a "good faith belief" that the discharge injunction did not apply, then a contempt finding would be inappropriate. 888 F.3d at 444–45. This was true, the Ninth Circuit held, even "if the creditor's belief is unreasonable." *Id.* at 444. Applying the law to the facts of the case before it, the Ninth Circuit ruled: "Although the Creditors . . . were ultimately incorrect, their good faith belief, even if unreasonable, insulated them from a finding of contempt." *Id.*

So, the Ninth Circuit's *Taggart* standard was forgiving to creditors: it allowed a creditor to proceed with otherwise objectively unreasonable acts so long as it held a subjective good faith belief that it was in the right. *Taggart*, 139 S. Ct. at 1803 ("[The Ninth Circuit's standard] may too often lead creditors who stand on shaky legal ground to collect discharged debts . . . ."). Finding such a creditor in contempt, then, required investigating and litigating "difficult-to-prove states of mind." *Id*. And what the

bankruptcy court found here, in effect, was that the plan, related orders, and the lack of the conventional lien reduction motion created such confusion and uncertainty that Nationstar had an adequate defense under the Ninth Circuit *Taggart* standard.

The Supreme Court, however, changed the metrics of decision after the bankruptcy court ruled. It determined that a bankruptcy court may "impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Id.* at 1801. This standard is "generally" an objective one. *Id.* at 1802. The Supreme Court rejected the Ninth Circuit's "good faith belief" standard: "We have explained before that a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Id*. That said, subjective intent is not always irrelevant: "Our cases suggest, for example, that civil contempt sanctions may be warranted when a party acts in bad faith." *Id.* On the other hand, a party's good faith, even if it does not prevent a finding of civil contempt, might help determine the appropriate sanction. *Id.*

Given the change in controlling law, we must vacate the decision and remand for a decision under the standard now required by the Supreme Court.

**The bankruptcy court erred to the extent it concluded that the plan**

**and bankruptcy proceedings did not affect Nationstar's lien.** The bankruptcy court also determined that performance under the plan did not require reconveyance of the Nationstar lien; we reverse on this point. We agree that the plan did not expressly so state. But the legal effect of the payment in full of the BAC secured claim as established by the plan had this effect. In chapter 13 proceedings, non-residential real property secured claims are subject to negotiated or compelled modification, and payment in full of such a modified secured claim eliminates the lien. Debtor's plan, agreed to by Nationstar's predecessor-in-interest, bifurcated its claim and paid the secured portion in full.

The Code generically describes a discharge as barring efforts to collect debts *personally* from the debtor. *See* 11 U.S.C. § 524(a)(2). But a creditor's right to foreclose or otherwise realize on its collateral, which is an *in rem* action against specific property, will often pass through the bankruptcy. *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). The debtor's personal liability on the claim is discharged, but the underlying obligation remains secured by the property. *Id*. at 85. So secured creditors may often foreclose on liens post-discharge. In some circumstances, however, the bankruptcy proceedings may alter the underlying claim.

Here, Debtor received a chapter 13 discharge under § 1328(a), which provides that, absent certain exceptions, as soon as practicable after a chapter 13 debtor finishes making plan payments, the bankruptcy court

"shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title . . . ." 11 U.S.C. § 1328(a). The scope of the discharge, then, depends on the plan.

A plan is, at heart, a contract between a debtor and her creditors, and it "must be interpreted according to the rules governing the interpretation of contracts." *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004). Whether a contract is ambiguous is a question of law. *Id.* at 1003–04.

So, the relevant questions are: did the plan provide for BAC's claim and how was it treated? The transcript of the final confirmation hearing makes clear that BAC negotiated consensual plan terms with Debtor. The confirmation order also evidences that the parties stipulated to the plan's terms. And the Payoff Orders state that the secured claim would be satisfied by payment under the plan. The record, thus, provides undisputed evidence that the plan provided for payment in full of the secured portion of the BAC claim. Debtor then performed on that plan, as later modified, and obtained a chapter 13 discharge of the secured claim.

Payment in full of a secured claim has import under the controlling California law. In California, a lien does not exist independently of the underlying debt; satisfaction of the underlying debt satisfies the lien. *All. Mortg. Co. v. Rothwell*, 10 Cal. 4th 1226, 1235 (1995); Cal. Civ. Code § 2909. Put simply, as a matter of California law, once an obligation no longer exists to be secured by the lien, the lien is void. *See, e.g., Martin v.*

14

*CitiFinancial Servs. (In re Martin)*, 491 B.R. 122, 127 (Bankr. E.D. Cal. 2013).

Bankruptcy law also supports this conclusion. Section 506(d) provides, subject to two exceptions not applicable here: "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ." 11 U.S.C. § 506(d). Put differently, § 506(d) voids liens when a creditor's claim is not allowed in the bankruptcy. *HSBC Bank USA, N.A. v. Blendheim (In re Blendheim)*, 803 F.3d 477, 489 (9th Cir. 2015). Here, BAC filed a secured claim, and the stipulated plan confirmation order provided that the amount of the secured claim was $169,340. That secured claim was paid. To the extent there was any other debt owing BAC, it was not an allowed secured claim and any lien allegedly securing it was void.

The correctness of the conclusion that payment in full under the plan eliminated the Nationstar secured claim and required reconveyance is underscored by the fact that Nationstar never argued to the contrary and voluntarily reconveyed the trust deed once Debtor filed its declaration in support of its discharge violation motion. Again, the record evidences no dispute on this point before the bankruptcy court took the matter under submission.

We pause to discuss the bankruptcy court's conclusion on that point. The bankruptcy court thought that the lien survived for several reasons. That is wrong as a matter of law, and, therefore, we cannot agree with

15

those conclusions.

First, the bankruptcy court did not take into account that the secured creditor expressly consented to confirmation of the plan and the treatment of its claim, did not oppose the debtor's motion to pay off the lien, and eventually reconveyed the deed of trust. The debtor's failure to provide the bankruptcy court with the transcript of the confirmation hearing probably contributed to this. But even without the transcript, the creditor's consistent behavior only makes sense as the creditor's acknowledgment that its secured claim had been fully satisfied and its lien rights extinguished.

Second, the bankruptcy court misinterpreted a term of the standard form plan that provides (with the bankruptcy court's emphasis) that property that revests in the debtor at the end of the plan term will be "<u>subject to all liens</u> and encumbrances in existence when the case was filed, <u>except those liens avoided by court order</u> or extinguished by operation of law." The bankruptcy court thought that the underlined language requires a separate lien avoidance order. But the bankruptcy court did not emphasize the last phrase: "or extinguished by operation of law." As we have pointed out, full payment of an allowed secured claim voids (i.e., extinguishes) the lien securing that claim by operation of state law and the Bankruptcy Code. The plan thus does not support the bankruptcy court's conclusion.

Third, the bankruptcy court stated that local practice requires a two-step process for lien avoidance. But the creditor never complained (in response to the Debtor's contempt motion) that its procedural rights were abridged. Further, the bankruptcy court acknowledged that the local forms it cited are mandatory only when a debtor seeks to avoid a wholly unsecured junior lien on the debtor's residence.[4] In this case, the debtor sought to modify a senior lien on nonresidential property on terms that the lienholder expressly accepted. The bankruptcy court did not explain why a debtor should have to file a separate motion to avoid a lien where the creditor had expressly agreed to the allowed amount of its secured claim, the debtor paid that claim in full, and state law and the Bankruptcy Code extinguish liens that do not secure allowed secured claims.[5]

Fourth, the bankruptcy court emphasized that the plan confirmation order provides for allowance and payment of the secured claim "[f]or purpose of plan confirmation." The bankruptcy court interpreted this prefatory clause to require a separate lien avoidance motion and order. The language of the confirmation order is inartful, but there is a more natural

---

[4] Indeed, the cited form is now optional. *See* Central District Local Form F 4003-2.4.JR.LIEN.ORDER.

[5] Local bankruptcy rules cannot enlarge, abridge, or modify substantive rights; they must be consistent with the Code and federal rules; and they must be applied in a manner consistent with the federal rules. *Anwar v. Johnson*, 720 F.3d 1183, 1189 (9th Cir. 2013).

reading: the plan was confirmed on the basis that the secured creditor's claim was allowed in an agreed amount and would be paid in full. The "for purposes of" phrase cannot reasonably be interpreted to impose a procedural requirement that would serve no useful purpose in the context of a consensual plan like this one.

## CONCLUSION

Based on the foregoing, we REVERSE in part and VACATE and REMAND for further determinations consistent with this decision.