# FILED

APR 15 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.    NC-19-1094-FBTa |
| JOHN G. MOSER, | Bk. No.    09-11945 |
| Debtor. | Adv. Pro.    18-01037 |
| STERLING-PACIFIC LENDING, INC., dba STERLING PACIFIC FINANCIAL, | |
| Appellant, | |
| v. | **OPINION** |
| JOHN G. MOSER, | |
| Appellee. | |

Argued and submitted on March 26, 2020

Filed – April 15, 2020

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Roger L. Efremsky, Bankruptcy Judge, Presiding

———

Appearances:     Peter L. Fear of Fear Waddell, P.C. argued on behalf of appellant; Michael C. Fallon on the brief for appellee.

———

Before: FARIS, BRAND, and TAYLOR, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

Creditor Sterling-Pacific Lending, Inc., dba Sterling Pacific Financial ("Sterling") asked the bankruptcy court whether the discharge injunction barred it from prosecuting certain claims against chapter 7[1] debtor Dr. John G. Moser in state court. The court decided that it could not rule without inappropriately speculating about the state court's decisions. It therefore dismissed Sterling's complaint and cautioned Sterling that it proceeded in state court "at its own peril."

We agree with Sterling that the bankruptcy court should have ruled on the complaint's request for declaratory relief. We therefore REVERSE the court's orders and judgment dismissing the adversary proceeding. Because Dr. Moser has repeatedly conceded that the discharge injunction does not apply to Sterling's claims, we REMAND for entry of judgment in favor of Sterling.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

## FACTUAL BACKGROUND

### A.     Prepetition events

Dr. Moser and another individual formed four California limited liability companies  (the "LLCs") with the stated purpose of owning and developing real estate. Sterling made secured loans to Dr. Moser and the LLCs. Dr. Moser guaranteed the loans made to the LLCs.

In 2008, Dr. Moser and the individual LLCs each filed lawsuits in state court against Sterling, alleging misrepresentation regarding the loans.

### B.     Dr. Moser's bankruptcy case

Dr. Moser filed a chapter 7 petition in 2009 and scheduled his interests in the LLCs. He received a discharge later that year.

During the bankruptcy case, Sterling removed the five state court lawsuits to the bankruptcy court. The effort failed: the chapter 7 trustee abandoned the estate's interests in the LLCs, and the bankruptcy court remanded the cases.

In January 2010, Sterling and Dr. Moser's bankruptcy trustee agreed to settle Dr. Moser's lawsuit against Sterling for $20,000. The bankruptcy court approved the compromise, and the chapter 7 trustee dismissed Dr. Moser's state court action. Dr. Moser's bankruptcy case closed in September 2011.

### C.     The LLCs' state court actions

The LLCs amended their state court complaints to add new claims.

Sterling believed that the amended claims asserted by the LLCs were really Dr. Moser's individual claims that the chapter 7 trustee had released. Sterling also believed that Dr. Moser had engineered this as an end-run around the settlement.

At Sterling's request, the bankruptcy court reopened Dr. Moser's bankruptcy case in 2013 to allow Sterling to file an adversary complaint seeking a determination that the compromise with Dr. Moser's estate also encompassed the LLCs' claims in their state court cases. But the bankruptcy court denied Sterling's motion for summary judgment and dismissed the adversary proceeding, holding that the state court should decide whether the claims asserted in state court belonged to the LLCs or to Dr. Moser. The court observed that, if the claims really belonged to Dr. Moser, the settlement agreement between Sterling and Dr. Moser's trustee extinguished them, but, if they belonged to the LLCs, the LLCs would be free to assert them.

Meanwhile, between 2011 and 2015, Sterling prevailed in the LLCs' four state court actions. In sum, the LLCs were held liable to Sterling for a total of $1,067,950.23, including over $164,000 in attorneys' fees and over $844,000 in damages.

Sterling then attempted to collect the fees and costs from Dr. Moser. In 2016, it filed a complaint ("Alter Ego Complaint") in state court against Dr. Moser and the LLCs, seeking to hold Dr. Moser liable for the LLCs'

4

debts on an alter ego theory.

**D.     Second reopening of the bankruptcy case and the motion for sanctions**

In 2018, Dr. Moser successfully reopened his bankruptcy case and sought sanctions against Sterling.[2] He argued that Sterling violated the discharge injunction when it filed the Alter Ego Complaint in state court. He contended that the discharge injunction barred it from recovering the $844,000 damages award from him or asserting a fraud claim against him. He also claimed that both the discharge and the settlement between the trustee and Sterling barred Sterling from recovering the fees and costs from him.

**E.     Sterling's adversary complaint**

Sterling filed an adversary complaint in the bankruptcy court against Dr. Moser for declaratory relief. It offered a proposed second amended Alter Ego Complaint ("Second Amended Alter Ego Complaint"), in which it clarified that it only sought to hold Dr. Moser liable for the fees and costs it incurred after Dr. Moser filed his bankruptcy petition. The Second Amended Alter Ego Complaint, in effect, conceded that Dr. Moser's discharge protected him from the $844,000 damage award and the claim

---

[2] The motion for sanctions was subsequently stayed when Sterling filed its adversary complaint; Dr. Moser's counsel later withdrew the motion after the court granted his motion for summary judgment and dismissed the adversary proceeding.

that Dr. Moser fraudulently induced Sterling to make the loans to the LLCs. Sterling requested: (1) a declaration that the Second Amended Alter Ego Complaint "did not seek to impose liability on Moser for any debt discharged in the Case;" and (2) a declaration that prosecution of the Second Amended Alter Ego Complaint, "including obtaining a judgment based on the allegations made therein and collecting on that judgment, does not violate the discharge injunction."

Dr. Moser's answer to the adversary complaint was curious in at least two respects. First, its form was odd: he did not respond specifically to the allegations of the complaint, but instead generally stated his position. Second, it contradicted his assertion, made only a few months earlier, that Sterling violated his discharge injunction. Now, he expressly stated that "Moser does not contend the obligations arising out of the Alter Ego Complaint, the claim for costs awarded to Sterling and against the Limited Liability Companies in the litigation brought by those entities against Sterling, were discharged in the chapter 7 filing." Instead, he claimed that the LLCs were not his alter egos, but if they were, the releases contained in the settlement agreement between the bankruptcy trustee and Sterling protected him. In short, he foreswore the protection of the discharge and instead argued that he was not liable to Sterling on the merits.

1.      **Dr. Moser's motion for summary judgment**

Dr. Moser filed a motion for summary judgment. Curiously, the

motion did not take issue with the only claim asserted in Sterling's complaint (a request for a declaratory judgment about the effect of the discharge injunction). It waved that question aside: "The issue from Moser's perspective **has nothing to do with the discharge**. From Moser's perspective the issue is one of the ownership of the claims prosecuted in the state court by related limited liability companies." (Emphasis added.) Instead, he pointed out that the settlement between Dr. Moser's trustee and Sterling extinguished all of his claims against Sterling and all of Sterling's claims against him. He appeared to argue that, if he and the LLCs were alter egos as Sterling contends, then both the claims and the liabilities of the LLCs belonged to him, and the settlement extinguished all of his claims and the LLCs' claims against Sterling, as well as all claims of Sterling against him and the LLCs.

Sterling argued that the motion for summary judgment was improper because it addressed claims that were not asserted in any pleading; Sterling's complaint did not present those claims and Dr. Moser did not file a counterclaim that presented the merits of the Alter Ego Complaint. It also argued that there were genuine disputes of material fact that precluded summary judgment.

2. **Sterling's motion for judgment on the pleadings**

Around the same time, Sterling moved for judgment on the pleadings. It argued that Dr. Moser had failed to specifically deny the

7

allegations in the complaint, so all allegations were deemed admitted, including the allegation that Dr. Moser's discharge did not apply to the claims Sterling asserted in the Second Amended Alter Ego Complaint. It requested that the bankruptcy court determine that the Second Amended Alter Ego Complaint did not violate the discharge injunction.

In response, Dr. Moser again acknowledged that the discharge did not protect him from Sterling's claims. He stated that he "no longer contends the chapter 7 discharge order bars [Sterling] from pursuing the alter ego claims. Rather, . . . [Sterling] is barred from pursuing the alter ego claims because the course of events in [Dr. Moser's] chapter 7 case precludes [Sterling] from now contending that [Dr. Moser] is the alter ego of the LLCs."

### 3.     The hearing on the motions and the bankruptcy court's ruling

The bankruptcy court held a hearing on the motion for summary judgment and motion for judgment on the pleadings. It noted that it was at a disadvantage because neither party had provided it with the filings and decisions in the underlying state court cases. It summarized the long history of Dr. Moser's bankruptcy proceedings and stated, "this is a state court issue that has to be resolved in state court because . . . you're asking me to give you a declaratory judgment saying . . . what you want to do won't violate the postdischarge injunction and you're really asking me to speculate what the [state court] may or may not do." The court stated that,

8

if the state court ruled against Sterling, Dr. Moser would be entitled to damages for a violation of the discharge injunction to the extent he personally incurred fees and costs. It warned Sterling that "if you can proceeding in state court, and I'm not saying you can't, you would just be doing so at your own peril that if you don't prevail across the board, you may be faced with a contempt proceeding."

The court declined to give Sterling "a green light to litigate in the state court." It denied the motion for judgment on the pleadings, stating that "there is no [way] that I can give you a decision on the dec. relief action that you have filed here, because . . . it's a state court proceeding . . . . I am not going to speculate how a state court judge is going to rule, given the limited information." It stated that it was granting Dr. Moser's motion for summary judgment without prejudice.

The bankruptcy court issued an order and judgment granting summary judgment in favor of Dr. Moser and dismissing the case without prejudice. The court separately denied the motion for judgment on the pleadings.

Sterling timely filed its notice of appeal from both orders.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A).

The bankruptcy court dismissed the adversary proceeding without

prejudice. Normally, the dismissal of an adversary proceeding without prejudice is an interlocutory order. *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 571-72 (9th Cir. BAP 2011). But in this instance, the court's ruling was final inasmuch as it conclusively denied Sterling's requested relief and ended the litigation. It stated that its dismissal was "without prejudice that if you choose to proceed in state court, . . . Sterling does so at its own peril." Thus, the court was not inviting Sterling to amend its complaint but simply telling Sterling that, if it proceeded in state court, there might be consequences in the bankruptcy court. This ruling is sufficiently final for the purpose of this appeal. Even if it were interlocutory, we would grant leave to appeal. *See Silver Sage Partners, Ltd. v. City of Desert Hot Springs (In re City of Desert Hot Springs)*, 339 F.3d 782, 787-88 (9th Cir. 2003) ("It is within the discretion of the district court and the BAP, however, to hear interlocutory appeals.").

Therefore, we have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in refusing the determine whether the Second Amended Alter Ego Complaint violated the discharge injunction.

## STANDARDS OF REVIEW

"We review the bankruptcy court's grant of summary judgment de novo." *Johnson v. Nielson (In re Slatkin)*, 525 F.3d 805, 810 (9th Cir. 2008)

(citation omitted). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

"We review the court's denial of a motion for judgment on the pleadings for an abuse of discretion." *Valley Oak Credit Union v. Villegas (In re Villegas)*, 132 B.R. 742, 744 (9th Cir. BAP 1991) (citing *Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 212 (7th Cir. 1982)). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

## DISCUSSION

### A. The bankruptcy court abused its discretion in refusing to clarify the scope of the discharge injunction.

The bankruptcy court dismissed Sterling's adversary proceeding because it thought it could not determine whether the Second Amended Alter Ego Complaint violated the discharge injunction without speculating about the outcome of the state court proceedings. We hold that declining to clarify the scope of the discharge for this reason was an abuse of discretion.

11

"A chapter 7 discharge releases the debtor from personal liability for debts arising 'before the date of the order for relief under this chapter' and enjoins creditors from enforcing or collecting upon those debts." *Bechtold v. Gillespie (In re Gillespie)*, 516 B.R. 586, 590-91 (9th Cir. BAP 2014) (citing § 727(b)). Similarly, § 524(a)(2) provides that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." § 524(a)(2).

But the discharge has limits. For example, if the debtor is engaged in litigation, gets a discharge in bankruptcy, voluntarily resumes the litigation, and loses, the debtor's liability for attorneys' fees that arose postpetition may not be discharged. *See, e.g.*, *Boeing N. Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018, 1026 (9th Cir. 2005) ("[C]laims for attorney fees and costs incurred post-petition are not discharged where post-petition, the debtor voluntarily commences litigation or otherwise voluntarily 'return[s] to the fray.'" (citation omitted)).

Creditors are often well advised to seek the bankruptcy court's guidance in order to avoid an inadvertent violation of the discharge injunction. *See Emmert v. Taggart (In re Taggart)*, 548 B.R. 275, 289 (9th Cir. BAP 2016), *aff'd*, 888 F.3d 438 (9th Cir. 2018), *vacated on other grounds and remanded sub nom. Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019) ("We have previously said that a party seeking a bankruptcy court determination

12

regarding the scope of the discharge should file an adversary complaint seeking declaratory relief."); *In re Bahary*, 528 B.R. 763, 773 (Bankr. N.D. Ill. 2015) ("When questions arise as to the application of the automatic stay or discharge injunction to a transaction, it is best for a creditor to seek relief from the bankruptcy court."). This is particularly apt where the creditor believes that the debtor has "returned to the fray." Because that doctrine depends on the facts and circumstances of each case, the creditor who relies on it without obtaining a prior bankruptcy court order is taking a risk.

Outside of the bankruptcy context, courts have similarly recognized that, if presented with a concrete question about the scope of an injunction, they should provide the parties with appropriate guidance:

> As courts have recognized, "[t]he Supreme Court teaches that **when questions arise as to the interpretation or application of an injunction order, a party should seek clarification or modification from the issuing court, rather than risk disobedience and contempt**."Although the decision whether to clarify an injunction is entrusted "to the sound discretion of the court," the Supreme Court has suggested that **courts should not "withhold a clarification in the light of a concrete situation that le[aves] parties or 'successors and assigns' in the dark as to their duty toward the court.**

*Kuang v. U.S. Dep't of Def.*, Case No. 18-CV-03698-JST, 2019 WL 718632, at *2 (N.D. Cal. Feb. 20, 2019) (citations omitted) (emphases added). Such a determination is always within the court's discretion:

**A party "subject to an injunction always has the right to ask the court that is administering it whether it applies to conduct in which the person proposes to engage." To the extent that such a motion for clarification "looks like a request for an 'advisory opinion,' it is one that even a federal court can grant."** It is within the "sound discretion of the court" whether to grant such a clarification or modification of an injunction if a party "enter[s] upon transactions which raise doubts as to the applicability of the injunction." [C]ourts are always free, within their sound discretion, to clarify inexplicit injunctions in order to avoid unwitting contempts.

*Cornucopia Prods., LLC v. Dyson, Inc.*, Case No. CV12-0234-PHX-NVW, 2013 WL 12098786, at *1 (D. Ariz. June 20, 2013) (citations omitted) (emphasis added).[3]

In the present case, the bankruptcy court declined to rule on Sterling's request for an advance determination whether the Second Amended Alter Ego Complaint violated the discharge injunction, because the court thought that doing so would require it to speculate about the state court's ruling. The court evidently thought that the state court's decision might make it unnecessary to determine whether the discharge applied. This was error.

The basic question before the state court was whether Dr. Moser and

---

[3] This is not to say, however, that a creditor should or must always seek an advance determination. The Supreme Court noted the undesirability of such a rule in *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1803 (2019), and crafted a standard for violation of the discharge injunction accordingly.

the LLCs were alter egos, such that Dr. Moser should be held liable for the attorneys' fees and costs awarded against the LLCs. Logically, this question has only two possible answers, neither of which would eliminate the question of the discharge's applicability. If the state court holds that Dr. Moser is liable for the fees and costs, the question of whether that liability was discharged would remain. If the state court holds that Dr. Moser is not liable, the question of whether Sterling violated the discharge injunction in asserting those claims would remain. In other words, no possible result of the state court case could moot the discharge issue.

While bankruptcy courts have discretion to make advance determinations about the discharge, *see Sunburst Prods., Inc. v. Derrick Law Co.*, 922 F.2d 845, 1991 WL 1523, at *6 (9th Cir. 1991) (table) (stating that "[t]he modification or clarification of an injunction lies within the 'sound discretion' of the district court"), they should exercise that discretion with caution. In this case, the bankruptcy court entered an order (the discharge), the application of which was uncertain (due to the "return to the fray" doctrine of *Ybarra*) in a concrete, actual circumstance, yet declined to clarify the effect of its order. This left Sterling in an impossible position: it could either blindly proceed in state court and risk severe consequences in the bankruptcy court or play it safe and walk away from the potential recovery of large state court judgments.

The risk to Sterling is real and concrete. Although Dr. Moser agrees that the discharge does not apply to the postdischarge fees and costs, he has reversed ground before and might do so again if it suited his interest.

Therefore, the bankruptcy court erred as a matter of law when it held that it could not rule on Sterling's request for a declaratory judgment.[4]

**B.   Dr. Moser concedes that the discharge injunction does not apply to the Second Amended Alter Ego Complaint.**

The last question is the scope of our remand. Because of the unusual posture of the parties, a narrow remand is appropriate. Dr. Moser has repeatedly conceded that the discharge injunction does not apply to the Second Amended Alter Ego Complaint. Therefore, we simply direct the bankruptcy court to enter judgment in favor of Sterling on its adversary complaint.

A party is bound by its admissions in its pleadings. As the Ninth Circuit has stated:

The Ninth Circuit has acknowledged the doctrine of judicial

---

[4] Sterling raises three additional arguments. First, Sterling argues that Dr. Moser admitted the facts alleged in the adversary complaint because he did not properly answer the individual allegations. Second, Sterling argues that the bankruptcy court improperly decided the summary judgment motion for its own reasons, rather than on the grounds raised by Dr. Moser, and that the court failed to give Sterling an opportunity to respond to the court's reasoning. Third, Sterling requests that we decide whether alter ego liability is a theory of recovery, rather than a claim that can be discharged. We need not address these arguments because we reverse on the grounds stated above.

> admissions. "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." Judicial admissions are "conclusively binding on the party who made them."

*Spokane Law Enforcement Fed. Credit Union v. Barker (In re Barker)*, 839 F.3d 1189, 1195 (9th Cir. 2016) (quoting *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)); *see Beal Bank v. Crystal Props., Ltd. (In re Crystal Props., Ltd.)*, 268 F.3d 743, 752 (9th Cir. 2001) ("Because a judicial admission made at the district court is binding on this court, [appellant] is bound by its admission." (citing *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir. 1991))).

Sterling's adversary complaint in the bankruptcy court sought a declaratory judgment that it could prosecute the Second Amended Alter Ego Complaint in state court without violating the discharge injunction. In his answer to the complaint, Dr. Moser stated that he "**does not contend the obligations arising out of the Alter Ego Complaint**, the claim for costs awarded to Sterling and against the Limited Liability Companies in the litigation brought by those entities against Sterling, **were discharged** in the chapter 7 filing." (Emphasis added.) Similarly, in opposition to the motion for judgment on the pleadings, he asserted that he "no longer contends the chapter 7 discharge order bars [Sterling] from pursuing the alter ego claims." At the hearing on the motion for summary judgment and the

motion for judgment on the pleadings, Dr. Moser's counsel explicitly abandoned any argument for a discharge violation: "What they're looking for now is they're looking just for a finding of alter ego so that they can obtain the cost award against the LLCs, against Dr. Moser, and . . . **I am not suggesting that that is a violation of the discharge**." (Emphasis added.)

Furthermore, on appeal, he makes no effort to defend the bankruptcy court's ruling. Rather, he concedes, although in opaque language, that the bankruptcy court erred in granting him summary judgment:

> [Sterling] argues the lower court erred in granting [Dr. Moser's] summary judgment motion. Perhaps, but regardless of how the court ruled the case was nevertheless dismissed without prejudice. . . . If the lower court denied [Dr. Moser's] summary judgment motion, there would not have been a change in outcome, [Sterling] would still be free to pursue its alter ego claim in the state court.

Based on Dr. Moser's admissions, there is no dispute that the discharge injunction does not apply to the claims in the Second Amended Alter Ego Complaint. Therefore, we direct the bankruptcy court to enter judgment in favor of Sterling on its adversary proceeding. We make no determination as to the viability of the claims asserted in the Second Amended Alter Ego Complaint but only hold that, based on Dr. Moser's judicial admissions, Sterling's prosecution of those claims does not violate the discharge injunction.

## CONCLUSION

The bankruptcy court should have advised Sterling whether its prosecution of the Second Amended Alter Ego Complaint would violate the discharge injunction. We therefore REVERSE the court's orders and judgment and REMAND this case for entry of a judgment in favor of Sterling declaring that the discharge injunction does not apply to the claims in the Second Amended Alter Ego Complaint.